UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
BIANCA GONZALEZ-HEYES,

Plaintiff,

-against-

Case No:

**Complaint**

EMBLAZE ACADEMY,

Defendant.
---------------------------------------------------------------------x

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Bianca Gonzalez-Heyes ("Ms. Gonzalez-Heyes" or "Plaintiff"), by and through her undersigned counsel, Risman & Risman, P.C., as and for her Complaint in this action against Defendant Emblaze Academy ("Emblaze"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices and/or retaliation committed against Plaintiff, including Defendant's discriminatory treatment, harassment and/or unlawful retaliation of Plaintiff, due to her race and/or color, and/or national origin, and/or her disability, and/or her complaints of and/or opposition to discrimination and requests for accommodation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the New York City Human Rights Law, New York Administrative Code §§ 8-101 et seq. (the

"NYCHRL").

## PRELIMINARY STATEMENT

2. Emblaze is a charter school in New York City that is under supervision from the City of New York/Department of Education.

3. On March 4, 2019, Emblaze hired Ms. Gonzalez-Heyes as a Sixth-Grade Literature Teacher ("Teacher") for the upcoming school year. On August 5, 2019, Ms. Gonzalez-Heyes began working as a Teacher at Emblaze.

4. Ms. Gonzalez-Heyes' national origin is Mexican-American.

5. As a Teacher, Ms. Gonzalez-Heyes was supervised by Ms. Shelivia Ocasio ("Ms. Ocasio"), the Dean of Curriculum & Instruction of Humanities at Emblaze.

6. On January 9, 2020, while reviewing Ms. Gonzalez-Heyes' lesson plans, Ms. Ocasio made discriminatory statements regarding Ms. Gonzalez-Heyes' race and national origin and ability to teach about the Civil Rights Movement and the concept of privilege. In particular, Ms. Ocasio stated that Ms. Gonzalez-Heyes "is white," that she did not want Ms. Gonzalez-Heyes "white-washing" lessons or "pushing the white-savior narrative." Ms. Ocasio further stated to Ms. Gonzalez-Heyes, "if you do not understand privilege, you have no business teaching our brown and black students at Emblaze."

7. Ms. Gonzalez-Heyes thereafter complained of the aforementioned discrimination and harassment that she was experiencing from Ms. Ocasio to Emblaze's administration.

8. These actions by Ms. Ocasio caused Ms. Gonzalez-Heyes' severe depression and anxiety, which necessitated medical leave to take care of her health.

9. When Ms. Gonzalez-Heyes returned from medical leave, it was clear that Emblaze had every intention of pushing her out from her employment at the school.

10. Emblaze did not offer her a Teaching position. Rather, Emblaze offered Ms. Gonzalez-Heyes a Teaching Assistant position, in name only, wherein Ms. Gonzalez-Heyes was given remedial work, was reassigned to office work, was assigned to work as a receptionist, and was kept isolated from her former colleagues and students. Additionally, the Teaching Assistant position had a significantly reduced salary than that of a Teacher.

11. Emblaze had no discussion with Ms. Gonzalez-Heyes as to why she was not provided with a Teaching position or why her salary was being decreased.

12. Emblaze thereafter terminated Ms. Gonzalez-Heyes' employment for her complaints made of harassment and discrimination and in retaliation for her seeking time off to treat her disability.

## JURISDICTION AND VENUE

13. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981 and/or Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PARTIES

15. Ms. Gonzalez-Heyes is a Mexican-American, and a resident of the State of New York. At all relevant times, she met the definition of an "employee" under all applicable statutes.

16. At all relevant times, Emblaze operated a school located at 1164 Garrison Ave., Bronx, NY

10474 and regularly transacts business in this district.

17. At all relevant times, Emblaze has met the definition of an "employer" under all applicable statutes.

18. At all relevant times, Emblaze had authority to make personnel decisions concerning Ms. Gonzalez-Heyes' employment, assignments, salary and other employment benefits. Emblaze also had, and continues to have, authority to discipline, authority to reduce salaries, and the authority to terminate, Ms. Gonzalez-Heyes and other Emblaze employees.

## PROCEDURAL REQUIREMENTS

19. On or about April 5, 2020, Ms. Gonzalez-Heyes filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII. Her charge arises out of the same facts alleged herein.

20. On or about March 9, 2023, Ms. Gonzalez-Heyes received a notice of her right to sue issued by the EEOC in connection with her previously filed charge of discrimination. This Complaint has been filed within 90 days of Ms. Gonzalez-Heyes' receipt of her right to sue notice from the EEOC.

21. Prior to the commencement of this action, a copy of Ms. Gonzalez-Heyes' Complaint was served on both the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of the New York City Administrative Code.

22. Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

### I. Bianca Gonzalez-Heyes

23. Ms. Gonzalez-Heyes had been employed by Emblaze since August 5, 2019.

24. When hired, Ms. Gonzalez-Heyes was employed as a Teacher at Emblaze.

25. After complaining of discrimination and harassment by her supervisor, Ms. Gonzalez-Heyes went on medical leave.

26. After she returned from medical leave, as detailed herein, Ms. Gonzalez-Heyes was employed as what was identified as a Teacher's Assistant at Emblaze.

27. At all times herein, Ms. Gonzalez-Heyes performed her duties as a Teacher competently and sufficiently.

28. At all times herein, Ms. Gonzalez-Heyes performed her duties as a Teacher's Assistant competently and sufficiently.

29. Ms. Gonzalez-Heyes was a dependable and dedicated employee for the duration of her tenure with Emblaze.

30. As a Teacher, Ms. Gonzalez-Heyes' duties included, but were not limited to, creating lesson plans, teaching students, and examining students.

31. Ms. Gonzalez-Heyes' record indicates that prior to her complaint her reviews showed that her performance was satisfactory, without discussion of any need for improvement.

## II. The Incident With Ms. Shelivia Ocasio

32. As a Teacher, Ms. Gonzalez-Heyes was supervised by Ms. Ocasio, the Dean of Curriculum & Instruction of Humanities.

33. Ms. Ocasio had supervisory authority over Ms. Gonzalez-Heyes.

34. Ms. Ocasio worked with teachers, including Ms. Gonzalez-Heyes, to ensure teachers' understanding of curriculum subject matter, co-teach lessons when teachers needed extra support, develop academic plans and lessons, and model lessons.

35. Upon information and belief, Ms. Ocasio is African-American.

36. Ms. Ocasio's supervision of Ms. Gonzalez-Heyes included weekly meetings to discuss lesson plans, review grades, and provide guidance.

37. On Thursday, January 9, 2020, Ms. Ocasio asked Ms. Gonzalez-Heyes to step out of a scheduled meeting to discuss lesson plans and student grades.

38. Ms. Ocasio identified a lesson that Ms. Gonzalez-Heyes taught about the Civil Rights Movement two days prior.

39. Regarding the Civil Rights Movement lesson plan, Ms. Ocasio stated that she did not appreciate that Ms. Gonzalez-Heyes mentioned that other races took part in the Montgomery Bus Boycotts and protests, although that is historically accurate.

40. Ms. Ocasio further stated that she did not want Ms. Gonzalez-Heyes "white-washing" lessons or "pushing the white-savior narrative."

41. Ms. Gonzalez-Heyes explained to Ms. Ocasio that the participation of other races in the Montgomery Bus Boycotts and protests was highlighted by the PBS documentary that students had recently watched, and is historically accurate, which is the reason that was part of her lesson plan.

42. Ms. Ocasio had approved the PBS documentary the week prior to Ms. Gonzalez-Heyes showing the material.

43. Ms. Ocasio noticed that one of the multiple-choice questions on Ms. Gonzalez-Heyes' lesson plan included the word "privilege."

44. Ms. Ocasio asked Ms. Gonzalez-Heyes how Ms. Gonzalez-Heyes planned to teach the concept of privilege to students.

45. Ms. Gonzalez-Heyes replied by saying that she wanted to have students participate in what is known as the "privilege walk."

46. Ms. Ocasio then told Ms. Gonzalez-Heyes that there are different types of privilege, and that she wanted Ms. Gonzalez-Heyes to focus on racial privilege.

47. During this discussion, Ms. Ocasio then stated, “If you do not understand privilege, then you should not teach it.”

48. Ms. Ocasio then stated, “Because you are white, you have privilege.”

49. Ms. Gonzalez-Heyes responded, “I do not identify as white, I identify as Latinx.”

50. Ms. Ocasio then stated, “Oh… you’re Mexican or something? Right?” then she said very loudly, “But you are White!”

51. Ms. Ocasio went on saying, “In Texas people might have believed that you are not white, but here in New York, most people would say you are White, because you are White.”

52. Ms. Gonzalez-Heyes asked Ms. Ocasio if she was basing the statement on Ms. Gonzalez-Heyes’ physical attributes.

53. Ms. Ocasio stated, “Yes, and your experiences.”

54. Ms. Ocasio then attempted to excuse her discriminatory statements by saying, “and by the way, black people cannot be racist because we do not have the power or tools to do so.”

55. Ms. Gonzalez-Heyes responded by saying that she had never heard that, and that she believed that any human could be racist regardless of their race.

56. Ms. Ocasio then cited a Huffington Post article titled “Can Black People be Racist?”

57. Ms. Gonzalez-Heyes stated that she was open to hearing Ms. Ocasio’s perspective, but explained that she had never heard the statement that black people cannot be racist, prior to their conversation.

58. Ms. Ocasio then stated, “If you do not understand privilege, you have no business teaching our brown and black students at Emblaze.”

59. Ms. Gonzalez-Heyes tried to explain that she understood that her skin color may have afforded her a level of privilege, but could not understand why that had anything to do with her teaching the students at Emblaze.

60. Ms. Ocasio then repeated the previous statement that "If you do not understand privilege, you have no business teaching our brown and black students at Emblaze."

61. The above-identified exchange with Ms. Ocasio completely traumatized Ms. Gonzalez-Heyes. Her national origin and the color of her skin were called into question and discriminatorily discussed by Ms. Ocasio, and Ms. Ocasio was passing judgment on her ability to teach her students because of her national origin, her race, and the color of her skin.

62. Ms. Gonzalez-Heyes submitted a complaint of discrimination and harassment to Emblaze regarding the January 9, 2020 interaction between her and Ms. Ocasio. Prior to the submission of the complaint, Ms. Gonzalez-Heyes met with Kristen Shroff ("Ms. Shroff"), Head of School, to discuss what had transpired with Ms. Ocasio, and was sent home that same day by Ms. Shroff.

63. Upon information and belief, Emblaze interviewed Ms. Ocasio in the course of investigating Ms. Gonzalez-Heyes' complaint.

64. Upon information and belief, Ms. Ocasio admitted to making comments like "white-washing history" and "black people can't be racist" in the interview with Emblaze.

65. Upon information and belief, Emblaze determined that Ms. Ocasio violated school policy, but did not immediately terminate Ms. Ocasio's employment.

66. Upon information and belief, no material actions were taken against Ms. Ocasio at the conclusion of Emblaze's investigation into Ms. Gonzalez-Heyes' complaint, and she

continued to work in the same role until the end of the school year. However, although she did nothing wrong, and suffered the consequences of Ms. Ocasio's discriminatory and harassing conduct, Ms. Gonzalez-Heyes was placed in a demoted role with a significant reduction in salary.

**III. Ms. Gonzalez-Heyes Took Time Off From Work to Tend to Her Health**

67. The actions of Emblaze and Ms. Ocasio caused Ms. Gonzalez-Heyes to struggle with anxiety and depression, and she continues to suffer.

68. The aforementioned incidents caused Ms. Gonzalez-Heyes to sustain severe emotional distress.

69. The aforementioned incidents caused Ms. Gonzalez-Heyes to experience depression and anxiety.

70. The aforementioned incidents affected Ms. Gonzalez-Heyes' well-being to such a degree that she was forced to take a medical leave of absence.

71. Upon information and belief, all leaves of absence for employees of Emblaze go through a third-party organization called Littlebird HR.

72. Upon information and belief, Littlebird HR is contracted to provide human resources services to Emblaze.

73. Upon information and belief, Ms. Gonzalez-Heyes suffered damages as a result of Defendant's conduct.

**IV. Emblaze Offered Ms. Gonzalez-Heyes a Demoted Position Upon Return**

74. In or around April 2020, Ms. Gonzalez-Heyes returned from medical leave.

75. Instead of placing Ms. Gonzalez-Heyes into an equivalent position, Emblaze offered Ms. Gonzalez-Heyes a Teacher's Assistant/Teaching Fellow position, which was only that position in name and not function.

76. The Teacher's Assistant position offered a substantially reduced salary to that of a Teacher at Emblaze.

77. The Teacher's Assistant position did not allow Ms. Gonzalez-Heyes to continue working in her previous role as a Teacher.

78. This new position did not allow Ms. Gonzalez-Heyes to interact with students.

79. Thus, upon returning from medical leave, Ms. Gonzalez-Heyes was offered a demoted role with a significant reduction in salary.

80. The leave of absence Ms. Gonzalez-Heyes was forced to take because of Emblaze and Ms. Ocasio's actions and inactions left her and her family in a position of financial hardship.

81. Thus, under this pretext and under clear protest, Ms. Gonzalez-Heyes accepted the Teacher's Assistant position.

82. Upon return as a Teacher's Assistant, Ms. Gonzalez-Heyes was given remedial work, reassigned to office work, worked as a receptionist, and was kept isolated from her former colleagues and her students.

83. Ms. Gonzalez-Heyes no longer taught students at Emblaze upon return.

84. As a Teacher's Assistant, Ms. Gonzalez-Heyes was also assigned to support the school's recruitment and enrollment.

85. Normally, A Teacher's Assistant would be tasked with making lesson plans, teaching/delivery of instruction to students in person or online, data management, creation of academic assessments, grading, and inputting grades.

86. The position of Teacher's Assistant did not normally entail supporting the school's recruitment and enrollment. These tasks are assigned to office staff at Emblaze.

87. Emblaze's offer of a Teacher's Assistant position, and Emblaze's requirement that Ms. Gonzalez-Heyes no longer perform any duties that would normally be required of a Teacher or Teacher's Assistant, was made in retaliation for Ms. Gonzalez-Heyes' complaints of discrimination and harassment against her supervisor, Ms. Ocasio, and her request for accommodation and taking of medical leave.

88. These actions taken against Ms. Gonzalez-Heyes are material, adverse, and altered the terms of her employment.

89. Ms. Gonzalez-Heyes was unpaid during the entire period she was out of work.

**V. Emblaze Terminated Ms. Gonzalez-Heyes' Employment**

90. In June 2020, Emblaze told Ms. Gonzalez-Heyes that she was not invited to work at Emblaze the following school year, effectively terminating her employment.

91. The discriminatory and retaliatory motive behind Emblaze's termination of Ms. Gonzalez-Heyes' employment is clear from the aforementioned timeline.

92. Ms. Gonzalez-Heyes' termination was an adverse employment action.

93. Emblaze terminated Ms. Gonzalez-Heyes' employment because of her complaint about her supervisor's discriminatory and harassing treatment, and her request for accommodation and taking of medical leave.

94. The damage inflicted upon Ms. Gonzalez-Heyes was a direct and proximate result of the conduct complained of herein, and has caused emotional injury and severely impacted the

quality of her life because she was subjected to the deplorable and unlawful conduct described herein.

95. The circumstances surrounding the discriminatory acts and adverse employment actions Ms. Gonzalez-Heyes suffered give rise to a very strong and reasonable inference of race/color discrimination, national origin discrimination, disability discrimination, and retaliation, first demoting Ms. Gonzalez-Heyes, then completely pushing her out from any association with Emblaze, by terminating her employment.

96. As a result of Defendant's discriminatory conduct, Ms. Gonzalez-Heyes has suffered the adverse effects of race/color discrimination, national origin discrimination, disability discrimination, retaliation, and the quality of her life has been irreparably damaged and her self-esteem, self-respect and well-being have been irreversibly harmed because she was subjected to the intimidating and humiliating type of conduct described herein, all of which will continue into the future and remain a source of humiliation, anguish, and financial loss to Ms. Gonzalez-Heyes for the remainder of Ms. Gonzalez-Heyes' working life, so that the quality of Ms. Gonzalez-Heyes' life has been significantly damaged as a result of the discrimination to which she was subjected by defendant, as well as defendant's retaliatory termination of Ms. Gonzalez-Heyes' employment.

97. The acts of Defendant were committed with reckless indifference in the face of a perceived risk that its actions would violate Ms. Gonzalez-Heyes' protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon Ms. Gonzalez-Heyes and in addition to all the other measures of relief to which Ms. Gonzalez-Heyes may be properly entitled herein, Defendant should also be required to pay punitive

damages as punishment for its discriminatory conduct, in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A FIRST CAUSE OF ACTION**

**(Discrimination in Violation of Section 1981)**

98. Ms. Gonzalez-Heyes repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if more fully set forth herein.

99. Defendant has discriminated against Ms. Gonzalez-Heyes on the basis of her race and/or color in violation of Section 1981 by denying her the same terms and conditions of employment available to employees who are not perceived as white, including but not limited to, offering her a demoted position with a significantly lower salary when she returned from medical leave, assigning her remedial work when she returned from medical leave, and terminating her employment.

100. Defendant has also discriminated against Ms. Gonzalez-Heyes on the basis of her race and/or color, in violation of Section 1981 by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environmental that has included, among other things, severe or pervasive discrimination committed against Ms. Gonzalez-Heyes.

101. As a direct and proximate result of the Defendant's unlawful discriminatory conduct in violation of Section 1981, Ms. Gonzalez-Heyes has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

102. Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981 for which Ms. Gonzalez-Heyes is entitled to an award of punitive damages.

**AS AND FOR A SECOND CAUSE OF ACTION**

**(Retaliation in Violation of Section 1981)**

103. Ms. Gonzalez-Heyes repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if more fully set forth herein.

104. Defendant has retaliated against Ms. Gonzalez-Heyes by, inter alia, offering her a demoted position at a significantly lower salary, and by ultimately terminating Ms. Gonzalez-Heyes' employment, all in violation of Section 1981 for her opposition to discriminatory practices and language directed toward herself, and/or her participation in lodging complaints about such discriminatory practices.

105. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Ms. Gonzalez-Heyes has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

106. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Section 1981, Ms. Gonzalez-Heyes has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

107. Defendant's unlawful retaliatory actions constitute malicious, willful and wanton violations of Section 1981 for which Ms. Gonzalez-Heyes is entitled to an award of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**

**(Discrimination in Violation of Title VII)**

108. Ms. Gonzalez-Heyes hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

109. Defendant has discriminated against Ms. Gonzalez-Heyes on the basis of her race and/or color and and/or national origin in violation of Title VII by denying her the same terms and conditions of employment available to employees who are not Mexican-American and/or perceived as white, including but not limited to, offering her a demoted position at a significantly lower salary after she returned from medical leave, and unlawfully terminating Ms. Gonzalez-Heyes' employment.

110. Defendant has also discriminated against Ms. Gonzalez-Heyes on the basis of her race and/or color and/or national origin, in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that has included, among other things, severe and pervasive discrimination committed against Ms. Gonzalez-Heyes.

111. As a direct and proximate result of Defendant's unlawful discriminatory conduct and harassment in violation of Title VII, Ms. Gonzalez-Heyes has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to, loss of future income, compensation and benefits for which she is entitled to an award of damages.

112. As a direct and proximate result of Defendant's unlawful discriminatory conduct and harassment in violation of Title VII, Ms. Gonzalez-Heyes has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of damages.

113. Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Ms. Gonzalez-Heyes is entitled to an award of punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**

**(Retaliation in Violation of Title VII)**

114. Ms. Gonzalez-Heyes hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

115. Defendant has retaliated against Ms. Gonzalez-Heyes by, inter alia, offering her a demoted position at a significantly reduced salary when she returned from medical leave, and by ultimately terminating Ms. Gonzalez-Heyes' employment, all in violation of Title VII, for her opposition to discriminatory practices directed toward her, and/or her participation in lodging complaints about such discriminatory practices.

116. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Title VII, Ms. Gonzalez-Heyes has suffered, and continue to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

117. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in

violation of Title VII, Ms. Gonzalez-Heyes has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

118. Defendant's unlawful retaliatory actions constitute malicious, willful and wanton violations of Title VII for which Ms. Gonzalez-Heyes is entitled to an award of punitive damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

**(Discrimination on the Basis of Race and/or Color and National Origin in Violation of Chapter 1, Title 8, §8-107(1)(a) of the Administrative Code of the City of New York)**

119. Ms. Gonzalez-Heyes repeats, realleges and incorporates each and every allegation contained in the paragraphs above as if more fully set forth herein.

120. The acts which constitute and form this cause of action were perpetrated upon Ms. Gonzalez-Heyes while she was in the course of her employment with Defendant and while she was protected under the Administrative Code because of her race and/or color, and national origin.

121. Ms. Gonzalez-Heyes at all relevant times herein, was a member of a protected class under the Administrative Code because she is Mexican-American and perceived as white.

122. Ms. Gonzalez-Heyes is qualified for her position and performs her duties in that position in a satisfactory manner and is in a position to continue to do so as well as she does now.

123. Given the circumstances surrounding Defendant's treatment of Ms. Gonzalez-Heyes through its management, and the hostile and discriminatory environment defendant generated as a result of its unlawful conduct, as more specifically described herein, which included among other things, offering Ms. Gonzalez-Heyes a demoted position with a significantly lower salary when she returned from medical leave, assigning Ms. Gonzalez-Heyes remedial work when she returned from medical leave, and her unwarranted retaliatory termination stemming from Defendant's clear disdain for Ms. Gonzalez-Heyes' complaints of discrimination and harassment, there is a strong inference that Defendant discriminated against Ms. Gonzalez-Heyes based on race and/or color, and national origin.

124. Defendant enabled and condoned the race and/or color, and national origin discriminatory behavior on the part of Ms. Ocasio, by among other things, failing to provide reasonable accommodations for Ms. Gonzalez-Heyes to return to work after she needed to take medical leave, offering Ms. Gonzalez-Heyes a demoted position upon returning to work, and terminating Ms. Gonzalez-Heyes' employment with Emblaze.

125. The facts alleged herein constitute unlawful discrimination against Ms. Gonzalez-Heyes by Defendant, based on Ms. Gonzalez-Heyes' race and/or color and national origin, in violation of Chapter 1, Title 8 of the Administrative Code §8-107(1)(a), which, *inter alia*, states that:

> It shall be unlawful discriminatory practice…[f]or an employer or agent thereof, because of the actual or perceived… race…national origin…of any person… to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

126. As a direct and proximate result of Defendant's violation of the Administrative Code, Defendant is liable to Ms. Gonzalez-Heyes pursuant to §8-502(a) of said statute for

"damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, or as they are here, and for pre-judgment interest.

127. In addition to being adversely affected in her employment and suffering a significant loss of income, Ms. Gonzalez-Heyes has been humiliated, demeaned and degraded, all of which has been caused by defendant's unlawful conduct due to discrimination based on Ms. Gonzalez-Heyes' race and/or color and national origin, in violation of Ms. Gonzalez-Heyes' human rights.

128. As a direct and proximate result of Defendant's conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Ms. Gonzalez-Heyes has suffered damages, injuries and losses, both actual and prospective, which include damage to her career, psychological damage, and the emotional pain and suffering Ms. Gonzalez-Heyes has been caused to suffer, and the impact upon the quality of life and her well-being.

129. Defendant's acts were egregious and committed with reckless indifference in the face of a perceived risk that its actions would violate Ms. Gonzalez-Heyes' protected rights under the Administrative Code, so that, in addition to damages inflicted upon Ms. Gonzalez-Heyes and in addition to all the other measures of relief to which Ms. Gonzalez-Heyes may be properly entitled herein. Defendant should also be required to pay punitive damages for their discriminatory conduct in order to deter defendant and others similarly situated from engaging in such conduct in the future.

130. That by reason of the foregoing, Ms. Gonzalez-Heyes has been damaged in a sum which exceeds the jurisdictional limits of all lower courts.

**AS AND FOR A SIXTH CAUSE OF ACTION**

**(Discrimination on the Basis of Plaintiff's Disability in Violation of Chapter 1, Title 8, §8-107(1)(a) of the Administrative Code of the City of New York)**

131. Mr. Gonzalez-Heyes repeats, realleges and incorporates each and every allegation contained in the paragraphs above as more fully set forth herein.

132. The acts which constitute and form this cause of action were perpetrated upon Ms. Gonzalez-Heyes while she was in the course of her employment with Defendant and while she was protected under the Administrative Code because of her disabilities.

133. Ms. Gonzalez-Heyes at all relevant times herein, was a member of a protected class under the Administrative Code because she was and is suffering from depression and anxiety. at the time of her employment with Defendant.

134. Ms. Gonzalez-Heyes is qualified for her position and performs her duties in that position in a satisfactory manner and is in a position to continue to do so as well as she does now.

135. Given the circumstances surrounding Defendant's treatment of Ms. Gonzalez-Heyes through its management, the inability to provide reasonable accommodations for Ms. Gonzalez-Heyes to facilitate her health and not exacerbate her disabilities, the hostile and discriminatory environment Defendant generated as a result of its unlawful conduct, as more specifically described herein, which included among other things, offering Ms. Gonzalez-Heyes a demoted position with a significantly lower salary when she returned from medical leave, assigning Ms. Gonzalez-Heyes remedial work when she returned from medical leave, and her unwarranted retaliatory termination stemming from Defendant's

clear disdain for Ms. Gonzalez-Heyes' complaints of discrimination and harassment, there is a strong inference that Defendant discriminated against Ms. Gonzalez-Heyes based on disability.

136. Defendant enabled and condoned the retaliatory and discriminatory behavior on the part of management, by among other things, failing to provide reasonable accommodations for Ms. Gonzalez-Heyes to return to work after she needed to take medical leave, offering Ms. Gonzalez-Heyes a demoted position upon returning to work, and terminating Ms. Gonzalez-Heyes' employment with Emblaze.

137. The facts alleged herein constitute unlawful discrimination against Ms. Gonzalez-Heyes by Defendant, based on Ms. Gonzalez-Heyes' disability, in violation of Chapter 1, Title 8 of the Administrative Code §8-107(1)(a), which, *inter alia*, states that:

> It shall be unlawful discriminatory practice…[f]or an employer or agent thereof, because of the actual or perceived… disability…of and person… to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

138. As a direct and proximate result of Defendant's violation of the Administrative Code, Defendant is liable to Ms. Gonzalez-Heyes pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, or as they are here, and for pre-judgment interest.

139. In addition to being adversely affected in her employment and suffering a significant loss of income, Ms. Gonzalez-Heyes has been humiliated, demeaned and degraded, all of which

has been caused by Defendant's unlawful conduct due to discrimination based on Ms. Gonzalez-Heyes' disability, in violation of Ms. Gonzalez-Heyes' human rights.

140. As a direct and proximate result of Defendant's conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Ms. Gonzalez-Heyes has suffered damages, injuries and losses, both actual and prospective, which include damage to her career, psychological damage, and the emotional pain and suffering Ms. Gonzalez-Heyes has been caused to suffer, and the impact upon the quality of life and her well-being.

141. Defendant's acts were egregious and committed with reckless indifference in the face of a perceived risk that its actions would violate Ms. Gonzalez-Heyes' protected rights under the Administrative Code, so that, in addition to damages inflicted upon Ms. Gonzalez-Heyes and in addition to all the other measures of relief to which Ms. Gonzalez-Heyes may be properly entitled herein. Defendant should also be required to pay punitive damages for their discriminatory conduct in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

142. That by reason of the foregoing, Ms. Gonzalez-Heyes has been damaged in a sum which exceeds the jurisdictional limits of all lower courts.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### (Retaliation for Complaint of Race and/or Color and National Origin Discrimination in Violation of Chapter 1, Title 8, §8-107(7) of the Administrative Code of the City of New York)

143. Ms. Gonzalez-Heyes repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

144. When Ms. Gonzalez-Heyes complained of race and/or color and national origin discrimination to management, which is a protected activity under the New York City Human Rights Law, she was subjected to retaliation, all of which adversely and severely impacted her career and well-being and was designed to punish her for having protested the reprehensible conduct she was forced to endure.

145. Defendant was aware that Ms. Gonzalez-Heyes engaged in protected activity under the New York City Human Rights Law when she complained and opposed conduct that she reasonably and properly believed to be unlawful, but nevertheless retaliated against her for doing so.

146. The retaliatory conduct and actions taken by defendant was causally connected to Ms. Gonzalez-Heyes' protected activity, i.e., complaining of discriminatory treatment by Ms. Ocasio that she reasonably and properly believed to be unlawful.

147. The aforementioned acts of Defendant constitutes unlawful discriminatory retaliation against Ms. Gonzalez-Heyes in violation of New York City Human Rights Law §8-107(7) which states, in pertinent part:

> "It shall be an unlawful discriminatory practice ... for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter …"

148. As a direct and proximate result of Defendant's violation of the New York City Human Rights Law, Defendant is liable to Ms. Gonzalez-Heyes pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been

judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here, and for pre-judgment interest.

149. As a direct and proximate result of Defendant's discriminatory conduct complained of herein, Ms. Gonzalez-Heyes has suffered damages, injuries and losses, both actual and prospective, which include the irreparable loss of income for the immediate future, damage to her career and the emotional pain and suffering.

150. The acts perpetrated on Ms. Gonzalez-Heyes were committed by Defendant with reckless indifference in the face of a perceived risk that its actions would violate Ms. Gonzalez-Heyes' protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon Ms. Gonzalez-Heyes and in addition to all other measures of relief to which Ms. Gonzalez-Heyes may be properly entitled herein, Defendant should also be required to pay punitive damages for its discriminatory conduct, in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

151. As a result of the Defendant's violations of the New York City Human Rights Law, Ms. Gonzalez-Heyes has been damaged in a sum that exceeds the jurisdiction of all lower courts.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

**(Retaliation for Requesting Accommodations in Violation of Chapter 1, Title 8, §8-107(7) of the Administrative Code of the City of New York)**

152. Ms. Gonzalez-Heyes repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

153. When Ms. Gonzalez-Heyes requested that Defendant provide her with the reasonable accommodation of taking medical leave due to her disabilities, which is a protected activity

under the New York City Human Rights Law, she was subjected to retaliation, all of which adversely and severely impacted her career and well-being and was designed to punish her for having protested the reprehensible conduct she was forced to endure.

154. Defendant was aware that Ms. Gonzalez-Heyes engaged in protected activity under the New York City Human Rights Law when she requested a reasonable accommodation for her disabilities, conduct that she reasonably and properly believed to be unlawful, but nevertheless retaliated against her for doing so.

155. The retaliatory conduct and actions taken by Defendant was causally connected to Ms. Gonzalez-Heyes' protected activity, i.e., requesting the reasonable accommodation of taking medical leave for her disabilities.

156. The aforementioned acts of Defendant constitute unlawful discriminatory retaliation against Ms. Gonzalez-Heyes in violation of New York City Human Rights Law §8-107(7) which states, in pertinent part:

> "It shall be an unlawful discriminatory practice ... for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (v) requested a reasonable accommodation under this chapter …"

157. As a direct and proximate result of Defendant's violation of the New York City Human Rights Law, Defendant is liable to Ms. Gonzalez-Heyes pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here, and for pre-judgment interest.

158. As a direct and proximate result of Defendant's discriminatory conduct complained of herein, Ms. Gonzalez-Heyes has suffered damages, injuries and losses, both actual and

prospective, which include the irreparable loss of income for the immediate future, damage to her career and the emotional pain and suffering.

159. The acts perpetrated on Ms. Gonzalez-Heyes were committed by Defendant with reckless indifference in the face of a perceived risk that its actions would violate Ms. Gonzalez-Heyes' protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon Ms. Gonzalez-Heyes and in addition to all other measures of relief to which Ms. Gonzalez-Heyes may be properly entitled herein, Defendant should also be required to pay punitive damages for its discriminatory conduct, in order to deter Defendant and others similarly situated from engaging in such conduct in the future.

160. As a result of Defendant's violations of the New York City Human Rights Law, Ms. Gonzalez-Heyes has been damaged in a sum that exceeds the jurisdiction of all lower courts.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as of right by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Bianca Gonzalez-Heyes, demands judgment, including punitive damages as applicable, against the Defendant, in an amount which exceeds the jurisdictional limits of all lower courts, on each cause of action; granting an order restraining defendant from any retaliation against the Plaintiff for participation in any form in this litigation; All damages which Plaintiff has sustained as a result of the Defendant's conduct, including back pay, front pay, general and special damages for lost compensation and job benefits she would have

received but for Defendant's conduct, and for emotional distress, humiliation, embarrassment, and anguish; Front pay to the Plaintiff until such time as she can be placed in the same position she would have occupied but for Defendant's unlawful conduct; Exemplary and punitive damages in an amount commensurate with Defendant's ability and so as to deter future malicious, reckless and/or intentional conduct; Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs; Pre-judgment and post-judgment interest, as provided by law; and Granting Plaintiff all other and further relief as this Court finds necessary and proper together with the costs and disbursements of this action and attorneys' fees as applicable.

Dated: New York, New York
June 1, 2023

RISMAN & RISMAN, P.C.

By: Jeffrey Risman

Jeffrey Risman, Esq.
Shannon Barry, Esq.
Attorneys for Plaintiff
299 Broadway – 17th Floor
New York, New York 10007
(212) 233-6400